[Cite as *Adam v. Kovitch*, 2013-Ohio-1020.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

LOUISE ADAM, deceased

     Plaintiff

     v.

JEFFREY KOVITCH

     Appellant

     v.

LINDSAY ADAM

     Appellee

C.A. No.      26497

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     2007-02-0639

DECISION AND JOURNAL ENTRY

Dated: March 20, 2013

---

BELFANCE, Judge.

{¶1} Jeffrey Kovitch appeals the decision of the Summit County Court of Common Pleas, Domestic Relations Division. For the reasons set forth below, we affirm.

I.

{¶2} Mr. Kovitch and Louise Adam had an on-again, off-again relationship for about thirty years. In 2003, they married hoping that they would be able to adopt a child. In 2004, they adopted O.K. from Russia and brought her home. Approximately three months after O.K. arrived in the country, Mr. Kovitch and Ms. Adam separated and, ultimately, divorced. Ms. Adam and O.K. moved into the home of Ms. Adam's adult daughter Lindsay Adam.

**{¶3}** Ms. Adam, O.K., and Lindsay lived together for the next six years until Ms. Adam passed away from cancer. O.K. began living with Mr. Kovitch, who, although he organized family events and outings, refused to allow O.K. to have one-on-one time with Lindsay. Lindsay filed a motion seeking visitation and companionship time with O.K. Following a hearing, the magistrate determined that it was in O.K.'s best interest that she have visitation with Lindsay. Mr. Kovitch objected to the magistrate's decision, but the trial court overruled his objections and adopted the decision of the magistrate.

**{¶4}** Mr. Kovitch has appealed, raising two assignments of error for our review. For ease of discussion, we address the assignments of error together.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING THIRD PARTY VISITATION AS IT WAS CONTRARY TO THE BEST INTEREST OF THE MINOR CHILD[.]

### ASSIGNMENT OF ERROR II

THE TRIAL COURT FAILED TO GIVE SPECIAL WEIGHT TO THE OPINION OF THE PARENT AS REQUIRED BY OHIO LAW[.]

**{¶5}** Mr. Kovitch essentially argues that the trial court was required to give his opinion special weight, and, since he opposed visitation, it abused its discretion when it overruled his objections to the magistrate's decision and determined that visitation with Lindsay was in O.K.'s best interest. We disagree.

**{¶6}** Generally, "[w]hen reviewing an appeal from the trial court's ruling on objections to a magistrate's decision, this Court must determine whether the trial court abused its discretion in reaching its decision." *Daniels v. O'Dell*, 9th Dist. No. 24873, 2010–Ohio–1341, ¶ 10. "In so

doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049–M, 2009–Ohio–3139, ¶ 18.

{¶7} "A trial court's decision regarding visitation rights will not be reversed on appeal except upon a finding of an abuse of discretion." *Harrold v. Collier*, 9th Dist. No. 06CA0010, 2006–Ohio–5634, ¶ 6. An abuse of discretion implies that a trial court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶8} Lindsay moved to have visitation with O.K. under R.C. 3109.11. R.C. 3109.11 provides,

> If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child.

R.C. 3109.11 also provides that the trial court must use the factors set forth in R.C. 3109.051(D) when determining whether visitation is in the best interests of the child. Those factors are

> (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
>
> (2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
>
> (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
>
> (4) The age of the child;
>
> (5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

R.C. 3109.051(D).

{¶9}  Mr. Kovitch argues that the trial court failed to give his opinion opposing visitation the "special weight" required by *Troxel v. Granville*, 530 U.S. 57, 70 (2000), and *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334.  *See Harrold* at paragraph one of the syllabus.  The Ohio Supreme Court has determined  that the "special weight" requirement is satisfied within R.C. 3109.051(D)(15), "since the statute explicitly identifies the parents' wishes regarding the requested visitation or companionship as a factor that must be considered when making its 'best interest of the child' evaluation." *Id.* at ¶ 43.  In other words, the Supreme Court held that, by considering this factor as contained in R.C. 3109.051(D), a court gives a parent's opinion the requisite special weight and the parent's opinion "is not minimized simply because Ohio has chosen to enumerate 15 other factors that must be considered by the trial court in determining a child's best interest in the visitation context." *Id.*  Thus, we do not find merit in Mr. Kovitch's argument that the trial court did not meet the standard outlined in *Troxel*.

{¶10}  Mr. Kovitch challenges some of the court's findings, essentially arguing that the trial court should have only believed the testimony of his witnesses.  In other words, Mr. Kovitch is arguing that the trial court's findings were against the manifest weight of the evidence.  *See*

*King v. King*, 9th Dist. Nos. 11CA0006-M, 11CA0023-M, 11CA0069-M, 2012-Ohio-5219, ¶ 31.

When reviewing the manifest weight of the evidence in civil matters,

> [t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶11} We initially note that the exhibits entered into evidence at the hearing before the magistrate have not been made part of the record on appeal, and, therefore, we must presume regularity in the proceedings below. *See Nelson v. Nelson*, 9th Dist. No. 10CA0115-M, 2011-Ohio-6200, ¶ 15. Nevertheless, the record before us supports the trial court's findings. Lindsay testified that O.K. lived with her for three years and that, during that time, she helped O.K. learn to speak English and generally spent a significant amount of time with her. Because Lindsay worked evenings, she was often able to attend O.K.'s school events. For example, she testified that she attended the St. Patrick Day's Mass at Our Lady of the Elms when O.K., who was in first grade, first spoke before a large group of people. Lindsay was the only family member in attendance. Lindsay also testified that she went to O.K.'s sporting events and often recorded them. Lindsay said that she tried to video tape O.K.'s "firsts," such as when she first played baseball.

{¶12} Debra Zupancic testified that she was lifetime friends with Ms. Adam. As such, she knew Lindsay her entire life and O.K. ever since Ms. Adam and Mr. Kovitch adopted her. According to Ms. Zupancic, Lindsay would drive O.K. to school and to her soccer games. Ms. Zupancic generally testified that O.K. and Lindsay had a strong relationship.

{¶13} Lisa Luoy, the guardian ad litem in this case, testified that Mr. Kovitch exhibited open hostility towards Lindsay, consistently making it clear that he did not want her to have visits with O.K. Ms. Luoy also testified that O.K. confided to her that Mr. Kovitch had repeatedly told O.K. that Lindsay was "doing this [(the litigation)] in an attempt to take [O.K.] away." Based on Ms. Luoy's initial observations of O.K., she requested O.K. be given a trauma loss assessment at Northeast Ohio Behavioral Health. However, Mr. Kovitch refused to let O.K. meet with the psychologist on her own; instead, he took O.K. to Catholic Charities Community Services for an evaluation. Ms. Luoy testified that she spoke with a representative of Catholic Charities and learned that they were not equipped to conduct the trauma loss evaluation.[1]

{¶14} Carol Miller, who supervised the visits between O.K. and Lindsay, testified that O.K. and Lindsay appeared to have a very close relationship. She testified further that O.K. "always greeted [Lindsay] with hugs and kisses. Visits always end with hugs and kisses. Actually at the end of a visit [O.K] will jump up into Lindsay's arms and wrap her legs around her body and give her a hug and a kiss." According to Ms. Miller, Lindsay was cooperative throughout the process while Mr. Kovitch was not, initially refusing to meet at any time other than Saturday at 9:00 am. Mr. Kovitch had Claudia Bridger, O.K.'s aunt, drop O.K. off for the visitations with Lindsay, and Ms. Miller heard Ms. Bridger remark in front of O.K. "'[W]hy does this have to be for two hours?'" Ms. Miller also heard Ms. Bridger say, upon seeing that Lindsay had brought items from her home to give to O.K., "'[I]t's about time. She should have given this to you a long time ago[.] * * * [F]inally you're getting some of your stuff back[.]" Ms. Miller recommended that future visits with Lindsay be unsupervised.

---

[1] Wanda Hively, a counselor at Catholic Charities, testified that she did not know what a trauma loss assessment was.

{¶15} Alissa Endicott, an evaluator for the trial court testified that, on one occasion when Mr. Kovitch went to Northeast Ohio Behavioral Health, he was overheard telling O.K. that they were not going to allow anyone to take her away from him. According to Ms. Endicott, Dr. Tener believed Mr. Kovitch's statements to be manipulative, especially since this was not a custody case but rather a request for visitation. Ms. Endicott also testified that Mr. Kovitch had submitted "a summary of his legal strategy [to her] which included * * * making things as expensive as possible and doing whatever he needed to do basically to stop Lindsay from having any contact with [O.K.]" When Ms. Endicott turned her back on Mr. Kovitch, he attempted to remove the document detailing his legal strategy, which she theorized was because he had realized after talking to her that the document was not helping him.

{¶16} Ms. Endicott and Ms. Luoy both recommended that Lindsay receive visitation with O.K., and Ms. Endicott testified that she believed it would be appropriate for O.K. to stay overnight with Lindsay one night a month and to spend another weekend afternoon with her.

{¶17} Mr. Kovitch argues that, despite the evidence above, all of the factors in R.C. 3109.051(D) are either neutral or in favor of denying Lindsay visitation. Essentially, he argues that the trial court should have believed the testimony of his witnesses over the evidence submitted that was in favor of Lindsay. For example, he points to the testimony of Ms. Adam's brother John Bridger and her sister Ms. Bridger, who testified that Lindsay was not as involved in O.K.'s life as she indicated in her testimony. Mr. Kovitch also argues that visitation with Lindsay would undermine O.K.'s relationships with Mr. Bridger and Ms. Bridger with whom she has bonded since Ms. Adam passed away. He also points to testimony that O.K. was angry about having to visit Lindsay because it caused O.K. to miss a social event and that O.K. had told

Wanda Hively, a counselor at Catholic Charities Community Services, that she was indifferent about whether she spent time with Lindsay.

{¶18} However, Mr. Kovitch does not explain why the trial court was required to believe his witnesses over the other evidence in the record, especially given that Mr. Bridger and Ms. Bridger both admitted that they did not have much contact with O.K. prior to Ms. Adam's death and Ms. Bridger conceded that her relationship with Ms. Adam was rocky. Furthermore, the trial court was presented with evidence that Mr. Kovitch was inappropriately manipulating O.K. For example, although O.K. was characterized as irritated with having to visit Lindsay because she would be missing a social event, Mr. Kovitch, by his own admission, sat O.K. down and explained to her all of the different activities she would miss because of visiting Lindsay. Furthermore, although Ms. Hively testified that she believed O.K. had adjusted well to the loss of her mother and that O.K. had expressed indifference towards spending time with Lindsay, Mr. Kovitch had prevented the psychologist recommended by the guardian ad litem from conducting any similar assessment of O.K. Thus, after a thorough review of the record, we cannot say the trial court lost its way when it made any of its factual findings.

{¶19} Mr. Kovitch also argues that the trial court abused its discretion when it determined that it was in O.K.'s best interest that Lindsay be granted reasonable visitation with her. *See Harrold*, 2006–Ohio–5634, at ¶ 6. He suggests that the trial court's exercise of its discretion under R.C. 3109.11 to grant visitation was unreasonable, arbitrary or unconscionable. *Blakemore*, 5 Ohio St.3d at 219. In its decision, the trial court noted that Lindsay had lived with O.K. and that there was no indication that O.K.'s "interaction with [Lindsay] * * * had any negative impact on [O.K.]." *See* R.C. 3109.051(D)(1). It also noted that the parties live fairly close to each other and that, while O.K. has a busy schedule, minimal contact with Lindsay

would not be unreasonable. *See* R.C. 3109.051(D)(2)-(3). Nor did the court find it surprising that O.K. occasionally expressed negative feelings towards Lindsay given Mr. Kovitch's "open hostility to [her][.]"

{¶20} As noted above, the trial court was authorized to exercise its discretion under R.C. 3109.11 to award reasonable visitation to Lindsay. Mr. Kovitch again argues that, because he is a fit parent, his opinion is entitled to special weight. In other words, Mr. Kovitch suggests that unless evidence is submitted that he is not a fit parent, his parental opinion supersedes all the other factors in R.C. 3109.051. However, this argument does not have legal merit given the trial court's statutory obligations. *See* RC 3109.11; *Harrold*, 107 Ohio St.3d 44, 2005-Ohio-5334, at ¶ 43. As discussed above, it is evident that the trial court gave consideration to Father's opinion and wishes. It was also required to consider the additional best interest factors enumerated in R.C. 3109.051(D). In doing so, the trial court agreed with the magistrate that Mr. Kovitch was motivated more by his anger towards Lindsay than by O.K.'s best interest. It also had evidence that Mr. Kovitch was inappropriately manipulating O.K. and that the guardian ad litem believed visitation was in O.K.'s best interest. Though the record only hints at the reasons, it is clear that Mr. Kovitch and Lindsay Adam, despite their clear devotion to O.K., do not get along well with each other, and, unfortunately, these disagreements culminated in the rather contentious proceedings below. Based on the findings of the trial court and the record as a whole, we cannot conclude that the trial court abused its discretion in determining that visitation Lindsay was in O.K.'s best interest.

{¶21} Accordingly, Mr. Kovitch's assignments of error are overruled.

### III.

**{¶22}** Mr. Kovitch's assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

WENDY S. CREVELING, Attorney at Law, for Appellee.