DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff/Appellant, Brady Stalnaker, appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. We affirm.
 {¶ 2} The parties were married on September 9, 1990, and divorced on October 1, 2003. The parties have four minor children and Stalnaker is the custodial parent. Since the date of their dissolution, Stalnaker, appearing pro se, has filed frequent motions related to Peterson's companionship time with the children and Peterson, also appearing pro se, has responded and filed a few motions of her own. In the instant matter, Stalnaker appeals the decision of the trial court dated January 7, 2008, overruling Stalnaker's objections and adopting the magistrate's decision dated June 12, 2007, related to Stalnaker's motion to suspend Defendant/Appellee *Page 2 
Durenda Peterson's companionship with the parties' children, filed by Stalnaker on April 6, 2007. Peterson did not file an appellate brief.[1]
 {¶ 3} Stalnaker raises one assignment of error.
 Assignment of Error "[The trial court's] denial to [sic] [Stalnaker's] objection violates the safety of [Stalnaker's] children."
 {¶ 4} In his sole assignment of error, Stalnaker appears to be arguing that in overruling his objections to the magistrate's report and adopting the report as issued, the trial court: (1) failed to consider the health and safety of his children as required by R.C. 3109.051 and R.C. 2919.22(A); (2) failed to conduct a final settlement conference or evidentiary hearing as required by Loc. R. 27.03(D); (3) ignored the obvious bias of the magistrate; (4) failed to vacate the decision pursuant to Civ. R. 60(B) after new evidence was discovered; and (5) failed to consider the best interests of the children as required by R.C. 3109.051(D).
 {¶ 5} In his April 6, 2007 motion, Stalnaker requests the trial court to conduct an emergency hearing to temporarily suspend Peterson's companionship time with the children "for the reasons that a change in circumstances has occurred making it no longer in the children's best interest for visitation." Stalnaker argued that the following events or conduct supported his request: (1) Peterson violated the court's December 22, 2003, November 14, 2005, and April 5, 2006 orders; (2) Peterson routinely prevented or infringed upon his telephone time with the children; and (3) Peterson allowed the children to spend time with Jonathan Wilson, a registered sex offender who had raped a 5-year-old boy; (4) Peterson routinely told the children to lie to *Page 3 
their father about certain information; (5) Peterson had moved four times since April of 2006, and lived at 11 different addresses since October 2003; (6) Peterson had not secured employment and/or paid child support; (7) Peterson's husband (Greg Peterson) had been ordered by a judge to refrain from alcohol use in the presence of his child and to provide food for them; (8) Greg Peterson was under house arrest during the children's visits and arrested in front of them; (9) Peterson lies to the children about Stalnaker; (10) Peterson interferes with the children's regularly scheduled events and discourages them from activities that they enjoy; and (11) Peterson refuses to discuss and resolve these matters with Stalnaker.
 {¶ 6} On April 25, 2007, the magistrate granted Stalnaker's motion and temporarily suspended Peterson's visitation rights until the court could conduct a hearing on May 4, 2007. Peterson did not appear at the May 4, 2007 hearing because she was not served with notice of the hearing. Accordingly, on May 4, 2007, the trial court continued the temporary suspension of Peterson's visitation rights until the next scheduled hearing date, May 17, 2007. On May 8, 2007, Peterson filed objections to the May 4, 2007 order and on May 21, 2007, Peterson responded to Stalnaker's April 6, 2007 motion to suspend her companionship rights. On June 4, 2007, a hearing was held, after which the magistrate's decision was issued.
 {¶ 7} In her decision, the magistrate considered the requirements of R.C. 3109.051(A) and (C), and specifically the factors set forth in R.C. 3109.051(D), and denied Stalnaker's motion to suspend Peterson's companionship rights. The magistrate held, based on the evidence presented, that "it is in the children's best interest to continue to have companionship with" Peterson.
 {¶ 8} On June 22, 2007, Stalnaker filed a document entitled, "Objection to Journal Entry" and "Motion to Vacate" ("objections"). In the objections, Stalnaker challenged the *Page 4 
procedure utilized by the magistrate prior to issuing her decision. Stalnaker maintained that the parties did not settle their dispute at the initial settlement conference; that the trial court did not conduct an evidentiary hearing, as required by Local Rules 2.10(C), 27.03 and 28; and, that that the magistrate made a hasty decision. Stalnaker then argued that pursuant to Civ. R. 60(B), the magistrate's decision should be vacated because a decision rendered in violation of local rules "was a mistake and * * * inexcusable neglect." Stalnaker's objections finally asserted that the magistrate was biased against him and challenged the factual findings and holdings of the magistrate's decision. Stalnaker filed supplemental objections to the magistrate's decision on November 28, 2007, identifying incidents and conduct that had occurred since the hearing and citing specific pages of the hearing transcript that Stalnaker believed supported the objections.
 {¶ 9} The judgment entry adopting the magistrate's decision and overruling Stalnaker's objections considered the objections and supplemental objections as well as the record and issued an order identical to that contained in the magistrate's decision.
 {¶ 10} Pursuant to Civ. R. 53(D)(4)(d), a trial court must take the following action once objections to a magistrate's decision have been made:
 "Action on objections. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Id.
 {¶ 11} We review a trial court's order objections to a magistrate's decision for abuse of discretion. Medina Drywall Supply, Inc. v. ProcomStucco Sys., 9th Dist. No. 06CA0014-M, 2006-Ohio-5062, at ¶ 5. In applying this standard, we determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. Alleged errors must relate not to the *Page 5 
magistrate's findings or decision, but to the action of the trial court.Berry v. Firis, 9th Dist. No. 05CA0109-M, 2006-Ohio-4924, at ¶ 7, quoting Mealey v. Mealey (May 8, 1996), 9th Dist. No. 95CA0093, at *2.
 {¶ 12} We initially note that Stalnaker references in his objections and on appeal Civ. R. 60(B) and argues that the magistrate's decision should be vacated because the magistrate made an inexcusable mistake when she failed to follow local rules. This is not a proper subject of an objection under Civ. R. 53(D)(3)(b). Civ. R. 53 sets forth a procedure by which a trial court can reject the magistrate's decision and enter its own order. With regard to Stalnaker's argument in his objections that the magistrate was biased against him, Civ. R. 53(D)(6) provides a mechanism by which a party can move the court for "[d]isqualification of a magistrate for bias." Stalnaker did not file such a motion.
 {¶ 13} As to the merits of Stalnaker's objections, we begin with the alleged procedural errors. Stalnaker argues that Summit County Court of Common Pleas Domestic Relations Division Loc. R. 27.03 was not followed by the magistrate. Specifically, Stalnaker argues that the magistrate issued her decision without conducting a "final settlement conference" or "evidentiary hearing" as required by the rule. Stalnaker maintains, therefore, that the "case was never properly heard" resulting in "many complications * * * [and] unnecessary contempt hearings and orders that do not reflect all of the evidence." Stalnaker did not raise this specific issue before the trial court. Stalnaker's objection merely quotes the rule and states that "[n]o Evidentiary Hearing was set and no settlement was made at the Initial Settlement Conference. Therefore, the Magistrate had no right to rush to a hasty decision." Civ. R. 53(D)(3)(b)(ii) requires that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Stalnaker has therefore forfeited his right to assert this *Page 6 
alleged procedural error on appeal. Hose v. Gatliff, 9th Dist. No. 23704, 2008-Ohio-2430, at ¶ 14-15, citingCiv.R.53(D)(3)(b)(iv). Moreover, Stalnaker does not make any argument or cite to any law or authority on appeal that supports his assertion that his objections were overruled and that the magistrate's report was improperly adopted by the trial court because of the magistrate's alleged failure to follow Loc. R. 27.03.
 {¶ 14} Finally, although Stalnaker argues on appeal that the "case was never properly heard," the record does not support such argument. The magistrate conducted a hearing on June 4, 2007, and the transcript of that hearing is over 210 pages in length. Both Stalnaker and Peterson appeared pro se and made lengthy and substantial arguments to the magistrate. We find no merit in Stalnaker's challenge to the procedure in the trial court.
 {¶ 15} As to Stalnaker's challenge to the substance of the judgment entry, Stalnaker challenges the magistrate's determination that continued visitation with Peterson would be in the best interest of the children. Stalnaker's primary argument is that the magistrate did not consider the substantial evidence, which demonstrated that visitation was not in the best interest of the children for health and safety reasons. R.C. 3109.051(D)(7). Stalnaker also briefly argues that the magistrate did not consider the factors set forth in R.C. 3109.051(D)(5), (9), and (16). We disagree.
 {¶ 16} "R.C. 3109.051(D) provides sixteen factors which should be considered when determining whether a visitation schedule is in the child's best interest." Harrold v. Collier, 9th Dist. No. 06CA0010,2006-Ohio-5634, at ¶ 7. Those factors include, "[t]he child's adjustment to home, school, and community; * * * [t]he health and safety of the child; * * * [t]he mental and physical health of all parties; * * * [and] [a]ny other factor in the best interest of the child." R.C. 3109.051(D)(5), (7), (9), and (16). *Page 7 
 {¶ 17} As to issues related to the health and safety of the children, Stalnaker's primary concern was that the children were in the presence of a convicted sex offender. The magistrate found that Peterson has a nephew who is a registered juvenile sex offender, but noted that Peterson agreed to "keep the children away from her nephew if that's what the court orders." The magistrate and the trial court so ordered.
 {¶ 18} As to the other R.C. 3109.051(D) factors cited by Stalnaker, his entire argument is that,
 "The court was made aware that the constant evictions of [Peterson] had a negative impact on the children's emotional and mental adjustment. The order did not take the instability into account. * * * The court did not take into consideration [Peterson's] mental health or the safety of the children either."
 {¶ 19} The magistrate's decision reflects her consideration of Peterson's different addresses and notes that Peterson "does not understand how this instability might affect the parties' children. This is part of the reason why she was denied being granted custody of the children[.] * * * However, as [Peterson] only has companionship, the primary concern is whether she has a place where companionship can be exercised which is sufficient for the duration of the visits."
 {¶ 20} The magistrate acknowledged the parties' concerns about the children's activities. Stalnaker argued that Peterson refused to take the children to activities that took place during her companionship time and Peterson argued that Stalnaker purposely scheduled events during her companionship time. The magistrate found the number of activities to be reasonable and ordered Peterson to take the children to their activities during her companionship time.
 {¶ 21} The magistrate also acknowledged Stalnaker's concern about Peterson's husband, his lack of stable job, that he is under house arrest, and that he was arrested in front of the children. However, the magistrate noted, it was Stalnaker that called the police to tell them that *Page 8 
Peterson's husband had a warrant that resulted in the arrest in front of the children demonstrating that "he clearly did not care at that time that his children were present and would be negatively influenced. Thus he had equal blame for that influence." The magistrate held that, "neither stepparent has been determined to be a danger to the children[.]"
 {¶ 22} The portion of the magistrate's report that is the most demonstrative of the magistrate's consideration of the mental health of the parties vis-a-vis the best interest of the children states:
 "There is no requirement in any statute that anyone granted visitation with children be a fabulous role model. There is no requirement in the statutes authorizing companionship that a party's spouse must maintain continual stable employment. There is also no requirement that parents must have identical parenting styles. There was a time in the not too distant past that [Stalnaker] was no better role model than he claims [Peterson] and her spouse to be. [Stalnaker] has managed to get his house in order, thus the reason why he is currently the residential parent. [Stalnaker] has no insight into the fact that his continual belittling of [Peterson] does not in any way serve to improve her. He (and by his own admission his current spouse) write letters to [Peterson] that berate her, demean her, dismiss the fact of her motherhood and threaten her. Attached is a copy of one such letter, which was submitted by [Peterson] as an exhibit with [Stalnaker's] agreement. [Stalnaker] indicated that he and his wife wrote it together. This type of communication may also serve to explain [Peterson's] attitude."
The referenced letter, hearing transcript, and the record support the magistrate's conclusions. The magistrate also noted that Stalnaker had refused to allow Peterson visitation, conduct for which Stalnaker was found in contempt.
 {¶ 23} After citing the best interest factors of R.C. 3109.051, the magistrate then found that continued companionship with the children was in their best interest and noted that it would also "be in the children's best interest ** for both parties to stop swearing at each other and calling each other names, stop complaining about each other's spouses, and communicate with each other in the manner envisioned by their own agreement." *Page 9 
 {¶ 24} The record supports the magistrate's factual findings as set forth above. The record also demonstrates the nature of the parties' relationship and that at times, both parents have engaged in conduct that is not in the best interest of the children. Peterson's conduct was addressed by the trial court and is supported by the record. However, the record also contains evidence of subtle and continual efforts by Stalnaker to interfere with Peterson's parenting time. More directly, as the magistrate noted, Stalnaker admitted that he denied Peterson her visitation rights and the record demonstrates that he cut off her telephone visitation. "Each parent's willingness to * * * facilitate the other parent's parenting time rights" is another factor relevant to the determination of parenting time rights. R.C. 3109.051(D)(10). Given the "presumption that visitation with the parent is in the child's best interest," the record supports the magistrate's decision that it would be in the best interest of the children to continue to have companionship time with Peterson without interference by Stalnaker, and for the parties to work on improving their relationship for the sake of the children. See, Reynolds v. Nibert, 4th Dist. No. 01CA2271, 2002-Ohio-6133, at ¶ 28 (noting the presumption that exists under R.C. 3109.051(A)).
 {¶ 25} The decision of the magistrate demonstrates that she considered all relevant factors in light of the facts of the instant case. There was sufficient evidence to support the magistrate's decision to continue Peterson's companionship rights. The magistrate correctly applied the law. We hold, therefore, that the trial court did not abuse its discretion in adopting the magistrate's decision and overruling Stalnaker's objections. The judgment entry demonstrates that the trial court reviewed the magistrate's decision and sets forth "the outcome of the dispute and the remedy provided." Harkai v. Scherba Industries,Inc. (2000), 136 Ohio App.3d 211, 219. *Page 10 
 {¶ 26} Stalnaker's assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
Moore, P. J., Whitmore, J., concur.
[1] The record demonstrates that Peterson was served with Stalnaker's appellate brief as required by App. R. 13(B) and App. R. 18(A). *Page 1