[Cite as *King v. Carleton*, 2013-Ohio-5781.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| MAURA KING | C.A. No. 13CA010374 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| THOMAS CARLETON | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | CASE No. 08JB24786 |

## DECISION AND JOURNAL ENTRY

Dated: December 30, 2013

BELFANCE, Presiding Judge.

{¶1} Plaintiff-Appellant Maura King ("Mother") appeals from the judgment of the Lorain County Court of Common Pleas, Juvenile Division. For the reasons set forth below, we affirm in part and dismiss in part.

I.

{¶2} Mother and Thomas Carleton ("Father") are the biological parents of K.C., born June 5, 1998. In May 2009, after engaging in mediation, the parties came to an agreed parenting time schedule which was adopted by the court. The agreement provided that Father would have parenting time on alternating weekends and specified holidays; however, the agreement did not provide for overnight visitation. Prior to that agreement, Mother and Father lived together in what is now Father's home with K.C. and Mother's other children. In May 2012, Father filed a motion to show cause why Mother should not be held in contempt for denial of parenting time and a motion to modify the parenting time schedule.

{¶3} A hearing was held before a magistrate and K.C. was interviewed in-camera. Mother opposed K.C. having overnight visits with Father primarily because of Father's drinking, which Mother felt endangered K.C.'s safety. Ultimately, the magistrate found Mother in contempt but provided Mother the opportunity to purge the contempt prior to a sentence being imposed. In addition, the magistrate concluded that it was in K.C.'s best interest for Father to have overnight visits with K.C. and that the visitation should progress to standard order parenting time. The decision provided that Father must ensure that K.C. arrive at all activities in a timely fashion, and that Father refrain from drinking alcohol during parenting time with K.C. Mother's counsel filed timely objections to the magistrate's decision and supplemented those objections subsequent to the filing of the transcript of the magistrate's hearing. A transcript of the in-camera interview with K.C. was also provided to the trial court for consideration. The record reflects that the trial court held a hearing on the objections on January 15, 2013. The trial court overruled Mother's objections but concluded that the magistrate erred in finding two instances of missed parenting time, as opposed to only one, and corrected the error. Mother was found in contempt and given the opportunity to purge the contempt prior to sentencing. Father was awarded overnight visitation that would progress to standard order parenting time. Father was ordered to ensure that K.C. was timely present at her activities and to refrain from drinking alcohol during parenting time.

{¶4} Mother, appearing pro se, has appealed the trial court's decision, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING THE STANDARD ORDER OF VISITATION WITHOUT LOOKING AT ALL OF THE FACTORS IN 3109.05(D)(C)(K) AND (L) AS REQUIRED BY 3109.12 MOTHER UNMARRIED OR LOOKING AT ALL OF THOSE FACTORS IN THEIR DETERMINATION OF THE BEST INTEREST OF THE CHILD. THE TRIAL COURT ERRED IN NOT AFFORDING THE CHILD DUE PROCESS AND DENYING A REVIEW OF IN CAMERA BY APPELLANT'S ATTORNEY. [SIC.]

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING APPELLANT A FAIR AND IMPARTIAL JUDICIARY THE LACK OF FAIRNESS TO THE APPELLANT INFRINGED UPON APPELLANTS RIGHT TO DUE PROCESS. BY ALLOWING AND ADMITTING EXCESSIVE HEARSAY TESTIMONY BY APPELLEE AND DENYING APPELLANT THE SAME RIGHT. JUDGEMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. [SIC.]

{¶5} Mother makes a variety of arguments within her two assignments of error, some of which are difficult to follow. Mother contends that the trial court, improperly credited Father's testimony in finding her in contempt, denied Mother and K.C. due process, was biased, improperly considered hearsay and failed to consider all of the factors in R.C. 3109.051 in granting standard order visitation.[1]

---

[1] Mother was represented by counsel in the trial court. Despite the absence of the appropriate notice in the magistrate's decision required by Juv.R. 40(D)(3)(a)(iii), Mother's counsel filed timely objections to the magistrate's decision along with a transcript. Normally, in the absence of the required notice, this Court would remand the matter to the trial court so that the magistrate could enter an appropriate decision. *See In re T.S.*, 9th Dist. Medina No. 11CA0033-M, 2012-Ohio-858, ¶ 8. However, given the circumstances, such would seem unnecessary here. Nonetheless, we cannot say that the error is entirely harmless given that Mother raises issues not objected to by her attorney. To the extent Mother has raised issues in this appeal that were not objected to, due to the absence of the required notice, we will address Mother's arguments. Under the circumstances, we cannot conclude Mother has forfeited all but plain error due to her failure to object to certain matters. *See In re A.W.C.*, 4th Dist. Washington No. 09CA31, 2010-Ohio-3625, ¶ 18-19.

**{¶6}** It is well-established that pro se litigants should be granted reasonable leeway, and their motions and pleadings should be construed liberally so as to decide the issues on the merits as opposed to technicalities. *See, e.g., Pascual v. Pascual*, 9th Dist. Medina No. 12CA0036-M, 2012-Ohio-5819, ¶ 5. "However, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that [s]he remains subject to the same rules and procedures to which represented litigants are bound. [Sh]e is not given greater rights than represented parties, and must bear the consequences of h[er] mistakes." (Internal quotations and citations omitted.) *Id*.

**{¶7}** Generally, "[w]hen reviewing an appeal from the trial court's ruling on objections to a magistrate's decision, this Court must determine whether the trial court abused its discretion in reaching its decision." *Daniels v. O'Dell*, 9th Dist. Summit No. 24873, 2010-Ohio-1341, ¶ 10. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18.

**Contempt**

**{¶8}** We begin by addressing Mother's arguments pertaining to the finding of contempt. "Contempt of court consists of both a finding of contempt and the imposition of a penalty or sanction. Until the penalty or sanction is imposed by the court, the order is not a final, appealable order. The mere adjudication of contempt is not final until a sanction is imposed." (Internal citations and quotations omitted.) *Noll v. Noll*, 9th Dist. Lorain Nos. 01CA007932, 01CA007976, 2002-Ohio-4154, ¶ 13.

**{¶9}** In the instant matter, the trial court's February 15, 2013 entry states that Mother is "found in contempt for one missed visit." The trial court indicated that Mother

> is ordered to appear * * * for imposition of sentence on April 30, 2013 at 1:30pm.
> The execution of any sentence shall be stayed until that date and [Mother] is given

the opportunity to purge the contempt by providing one make-up day from 10:00am-6:00pm and paying the reasonable attorneys fees of [Father], in the amount of $1,000.00 * * * on or before April 30, 2013. If [Mother] purges said contempt prior to the sentencing date, counsel for the parties to prepare an agreed entry cancelling the same. Should [Mother] fail to purge the contempt as described above, each party is ordered to appear for a purge/sentencing hearing on April 30, 2013, at 1:30pm.

(Emphasis omitted.) "Therefore, there was no imposition of a penalty or sanction, and, as such, the portion of the order finding [Mother] in contempt is not final and appealable. We therefore do not have jurisdiction to review this portion of [Mother's] appeal." *Noll* at ¶ 14; *Compare id. with Hetterick v. Hetterick,* 12th Dist. Brown No. 2012-02-002, 2013-Ohio-15, ¶ 18-21 (discussing cases in which courts concluded the judgment was final where the trial court made a contempt finding and imposed a sentence even if there was an opportunity to purge).

**Judicial Bias**

{¶10} Additionally, Mother asserts that she was denied due process and an impartial hearing because the magistrate and judge were biased against her.

{¶11} Juv.R. 40(D)(6) states that "[d]isqualification of a magistrate for bias or other cause is within the discretion of the court and may be sought by motion filed with the court." Notably, Mother never filed a motion seeking to disqualify the magistrate. Accordingly, the trial court never had the opportunity to address the matter. This Court declines to address this matter for the first time on appeal, when it could have been raised in the trial court. *See Stalnaker v. Peterson,* 9th Dist. Summit No. 24071, 2008-Ohio-4329, ¶ 12 (noting that, pursuant to Civ.R. 53(D)(6), the appropriate mechanism to address the bias of a magistrate is via motion); *see also DiBiase v. DiBiase,* 7th Dist. Jefferson No. 12 JE 15, 2013-Ohio-2879, ¶ 19.

{¶12} With respect to Mother's argument that the trial court was biased, we note that Mother did not raise this issue in the trial court prior to filing her notice of appeal either.

Further, this Court has repeatedly concluded that "[a]n Ohio district court of appeals has no authority to render a decision with regard to disqualification, or to void a trial court's judgment on the basis of personal bias or prejudice on the part of a trial judge." (Internal quotations and citation omitted.) *Volpe v. Heather Knoll Retirement Village, Inc.*, 9th Dist. Summit No. 26215, 2012-Ohio-5404, ¶ 11; *see also* R.C. 2701.03.

### K.C.'s Right to Counsel and to Testify

{¶13} Mother seems to argue that the trial court erred in failing to appoint counsel for K.C. and in failing to have her testify. We do not agree.

{¶14} Juv.R. 4(A) states that "[e]very party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding." Pursuant to Juv.R. 2(Y), a party "means a child who is the subject of a juvenile court proceeding, * * * the child's parent or parents, * * * and any other person specifically designated by the court." Nonetheless, this Court, in the context of permanent custody proceedings, has concluded that "where no request was made in the trial court for counsel to be appointed for the children, the issue will not be addressed for the first time on appeal." *In re K.H.,* 9th Dist. Summit No. 22765, 2005-Ohio-6323, ¶ 41-42. Mother did not raise this argument below via objections, nor did Mother, or Father, move to have counsel appointed for K.C. Mother has not explained why this Court's precedent addressing the same issue in the context of permanent custody proceedings should not be applicable here. Accordingly, this argument is without merit.

{¶15} Mother also asserts that K.C. should have been allowed to testify. While the issue of having K.C. testify was discussed during the magistrate's hearing, the magistrate determined

such was not appropriate. Notably, Mother also indicated at the hearing that she did not want to put K.C. through testifying. Mother has not cited to any law which would require that K.C. be allowed to testify. *See* App.R. 16(A)(7). We note that K.C. was allowed to express her wishes during an in-camera interview. *See* R.C. 3109.051(C). That interview was transcribed and provided for the trial court in ruling on Mother's objections.[2] Mother has not explained how she was prejudiced by K.C.'s lack of testimony in light of the in-camera interview. Further, to the extent Mother has mentioned that the trial court erred in denying her attorney the opportunity to review the transcript of K.C.'s interview, Mother has not cited law supporting her assertion. *See* App.R. 16(A)(7); *see also Willis v. Willis,* 149 Ohio App.3d 50, 2002-Ohio-3716, ¶ 14-26 (12th Dist.) (discussing whether a parent can view a transcript of a child's in-camera testimony and concluding such was not appropriate); R.C. 3109.051(C) (stating that "the interview shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, *in the judge's discretion*, the attorney of each parent shall be permitted to be present in the chambers during the interview[]") (Emphasis added.); *In re Longwell*, 9th Dist. Lorain Nos. 94 CA 006006, 94 CA 006007, 1995 WL 520058, *3 (Aug. 30, 1995) (R.C. 3109.04(B)(2)(c), which contains comparable language to R.C. 3109.051(C), "clearly provides that the parents may not attend [the in-camera interview]. Further, the parents' attorneys, whom are no doubt highly partisan advocates of the parents' interests, may attend the interview only with the court's permission."). In light of Mother's limited argument in this respect, we find no merit in it.

---

[2] However, that interview is not part of the record on appeal.

**Hearsay, Lack of Discovery, Lack of Evidentiary Hearing**

{¶16}  Mother also asserts that the magistrate erred in allowing hearsay testimony from Father, in failing to permit discovery, and in failing to have an evidentiary hearing.  Mother's arguments are not supported by the record.

{¶17}   With respect to hearsay, the testimony that Mother refers to in her brief as hearsay is not hearsay, *see* Evid.R. 801(C), nor is it objected to on the basis of being hearsay. *See* Evid.R. 103(A)(1).   Moreover, Mother has not explained how, even assuming that the testimony was hearsay, its admission affected her substantial rights.  *See* Evid.R. 103(D).

{¶18}  Additionally, Mother asserts that she was denied discovery and was denied an evidentiary hearing.  Mother did not object to either issue below.

{¶19}  Mother asserts that, because her counsel indicated at the magistrate's hearing that discovery was "informal[]" that she was denied discovery.  There is nothing in the record to support her claim.  No application for an order granting discovery or any other indications that discovery was being withheld are contained within the record.  *See* Juv.R. 24.  Nor was there any indication in the record that opposing counsel had a contentious relationship during the course of the litigation.

{¶20}  With respect to Mother's assertion that she was denied an evidentiary hearing, we are unsure at what point in time Mother felt that a hearing should have been held that was not held.  The magistrate held a hearing on the contempt and parenting time issues, and the trial court held a hearing on Mother's objections to the magistrate's decision.[3]  Given Mother's lack of specificity in her argument, we can only overrule it.

---

[3] The transcript of the hearing on Mother's objections is not contained in the record on appeal.

**Parenting Time**

{¶21} Mother's remaining argument relates to the trial court's decision concerning parenting time with Father. Essentially, Mother asserts that the trial court failed to consider all of the statutory factors and that overnight visitation was not in K.C's best interest. Mother's counsel did file an objection to the magistrate's conclusion that it was in the best interest of K.C. to progress to standard order parenting time.

{¶22} "A trial court's decision regarding visitation rights will not be reversed on appeal except upon a finding of an abuse of discretion." (Internal quotations and citation omitted.) *Adam v. Kovitch,* 9th Dist. Summit No. 26497, 2013-Ohio-1020, ¶ 7. "Modification of visitation rights is governed by R.C. 3109.051." *Braatz v. Braatz,* 85 Ohio St.3d 40 (1999), paragraph one of the syllabus. "The party requesting a change in visitation rights need make no showing that there has been a change in circumstances in order for the court to modify those rights. Pursuant to R.C. 3109.051(D), the trial court shall consider the * * * factors enumerated therein, and in its sound discretion shall determine visitation that is in the best interest of the child." *Id.* at paragraph two of the syllabus.

{¶23} R.C. 3109.051(D) states that

[i]n determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the

adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

**{¶24}** The magistrate specifically indicated that it considered the factors in R.C. 3109.051(D) and concluded overnight visitation progressing to visitation according to the court's standard order parenting time schedule was in the best interest of K.C. After conducting a hearing on Mother's objections, a transcript of which is not in this Court's record, the trial court likewise agreed that the same was in K.C.'s best interest.

**{¶25}** In light of the record before us, we cannot conclude the trial court abused its discretion in overruling Mother's objection. Mother's main concern about Father having overnight visitation with K.C. was Mother's belief that Father drank excessively and posed a danger to K.C.'s safety, who at the time of the hearing was in high school. Father's drinking could be seen as relevant to factors 7, 9, and 16. *See* R.C. 3109.051(D)(7), (9), (16). Mother's concerns, while understandable, were appropriately considered and taken into account by the trial court.

{¶26} Father acknowledged that he pleaded no contest to a DUI approximately three years prior to the magistrate's hearing. K.C. was not present at the time. Father additionally admitted to sometimes drinking at lunch while K.C. was present, but stated that his girlfriend would be the designated driver under those circumstances. Father presented several witnesses who did not believe Father had a serious alcohol problem and who had observed Father's interaction with K.C. All of these witnesses described Father's and daughter's interactions as warm and positive. Mother, during her testimony, emphasized her concerns for K.C.'s safety in light of the fact that Father drinks. However, Mother was not present during any of Father's visitation and had no personal knowledge of Father drinking excessively while caring for K.C.

{¶27} In addition to Mother's own testimony, Mother presented the testimony of two of her sons to evidence Father's drinking problems. Both sons had resided with Father. The first son, Hammed Aboumerhi, testified that he did not believe it was a good idea for K.C. to have overnight visits with Father due to his drinking. Mr. Aboumerhi testified that at one point about 1.5 years prior to the hearing, Father called the son to come pick up K.C. from a visitation because Father was too drunk to drive K.C. home. Mr. Aboumerhi complied with Father's request.

{¶28} Mother's other son, Jason King, also testified. He testified that he too did not believe it was a good idea for Father to have overnight visits with K.C. Mr. King testified that he had, over the three years prior to the hearing, observed Father intoxicated at bars on two occasions. On one of those occasions, Mr. King was admittedly intoxicated himself.

{¶29} Mother also raised concerns during her testimony about Father failing to bring K.C. to various events on time and failing to allow K.C. to stay at certain important church activities. It is unclear from the record how often this posed a problem.

**{¶30}** We note that our review is somewhat limited by the fact that Mother failed to supply this Court with a transcript of the hearing on Mother's objections. *See* App.R. 9(B). We have no way of knowing what took place at the hearing on Mother's objections. It is unclear if additional evidence was presented or if only additional argument was made. Either way, this Court is without the benefit of information the trial court had before in determining the merit of Mother's objection. *See Chin v. Thudium*, 9th Dist. Summit No. 19041, 1999 WL 689900, *2-*3 (Sept. 1, 1999). In the absence of a complete record, this Court is obligated to presume regularity in the proceedings below. *See id.*

**{¶31}** Nonetheless, assuming that no additional evidence was presented at the hearing on Mother's objections, we can see no abuse of discretion. Considering the concerns raised by Mother, we conclude the magistrate, and trial court in adopting the magistrate's decision, acted reasonably. The trial court did not immediately order standard order parenting time but instead allows for a progression to standard order parenting time. Moreover, the decision provides that Father is not to drink alcohol while caring for K.C. and also states that Father is to ensure that K.C. arrives at her activities in a timely fashion. Accordingly, it seems that the trial court took Mother's concerns seriously in light of the evidence Mother presented to support her concerns when balanced against Father's testimony and Father's witnesses. It is evident to this Court that the trial court considered the appropriate factors in R.C. 3109.051(D) and did not abuse its discretion in its award of parenting time to Father.

**{¶32}** In light of the foregoing, we overrule Mother's assignments of error.

III.

**{¶33}** We dismiss this appeal to the extent that Mother appeals the trial court's finding of contempt and overrule Mother's remaining arguments, and, thus, affirm the judgment of the Lorain County Court of Common Pleas, Juvenile Division.

Appeal dismissed in part,
and judgment affirmed in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, J.
<u>CONCURS IN JUDGMENT ONLY.</u>

<u>APPEARANCES:</u>

MAURA KING, pro se, Appellant.

JAMES GEMELAS, Attorney at Law, for Appellee.