[Cite as *Auth v. Indus. Physical Capability Servs., Inc.*, 2017-Ohio-1268.]

STATE OF OHIO )
)ss:
COUNTY OF SUMMIT )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

RICHARD J. AUTH

    Appellee/Cross-Appellant

    v.

INDUSTRIAL PHYSICAL CAPABILITY
SERVICES, INC.

    Appellant/Cross-Appellee

    and

THOMAS B. GILLIAM

    Defendant

C.A. No.     28024

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2015 01 0446

DECISION AND JOURNAL ENTRY

Dated: April 5, 2017

CALLAHAN, Judge.

{¶1} Appellant/Cross-Appellee, Industrial Physical Capability Services, Inc. ("IPCS"), appeals from the judgment of the Summit County Court of Common Pleas. Additionally, Appellee/Cross-Appellant, Richard Auth, appeals from the court's judgment. This Court affirms.

I.

{¶2} IPCS is a corporation that performs physical capability testing for companies who want to assess the capabilities of potential and current employees. Dr. Thomas Gilliam formed IPCS in 1998 and created the mathematical model that the corporation uses to conduct its assessments. Dr. Gilliam operated IPCS and acted as its president and sole owner until 2010.

By that time, however, IPCS was struggling financially. To secure additional capital, Dr. Gilliam approached his friend, Auth, and the two agreed that Auth would invest in the company in exchange for an ownership interest.

{¶3}  Dr. Gilliam and Auth memorialized their investment agreement in two letters of understanding, signed April 29, 2010, and October 17, 2010. Pursuant to the first letter, Auth agreed to provide IPCS with marketing assistance and a line of credit in exchange for a 25% ownership interest in the corporation. Pursuant to the second letter, Auth agreed to provide IPCS with an additional line of credit in exchange for another 20% ownership interest in the corporation. The second letter also provided that Auth would "become CEO [of IPCS] with the same compensation * * * and benefits as [Dr.] Gilliam once cash flow permits." There is no dispute that, as a result of the letters of understanding, Auth became a 45% owner of IPCS while Dr. Gilliam retained a 55% ownership interest.

{¶4}  In 2012, IPCS consulted with a law firm that prepared a shareholder buy/sell agreement for the corporation. Dr. Gilliam and Auth ultimately executed the agreement in October 2012 along with a joint action that ratified several resolutions for the corporation. The buy/sell agreement addressed a variety of issues related to the corporation's stock, including issues pertaining to its transferability and repurchase. Meanwhile, the joint action established that IPCS would have two directors, Dr. Gilliam and Auth. The joint action also named Dr. Gilliam and Auth as the corporation's president and vice president, respectively.

{¶5}  At some point in 2014, Dr. Gilliam and Auth experienced a rift. The rift caused IPCS to hire a different law firm to represent its corporate interests. Meanwhile, both Dr. Gilliam and Auth retained separate counsel for themselves. Their inability to resolve the rift that arose between them ultimately led to the filing of this lawsuit.

**{¶6}** Auth initiated the current lawsuit by filing a complaint against both Dr. Gilliam and IPCS. Auth claimed that (1) IPCS breached the contract that it had with him pursuant to the letters of understanding, (2) Dr. Gilliam breached his fiduciary duties as IPCS' majority shareholder, (3) he was entitled to an accounting of IPCS' business records and financial information, and (4) he was entitled to declaratory judgment on a variety of issues. A portion of his claims revolved around the mathematical model that IPCS used to serve its clients. He alleged that Dr. Gilliam had only recently claimed to own the mathematical model himself, such that it was never IPCS' property. Auth asked the court to declare, among other things, that IPCS owned the mathematical model.

**{¶7}** IPCS responded to Auth's complaint and filed several counterclaims against him. IPCS claimed that (1) Auth breached their contract, as memorialized in the letters of understanding, (2) Auth breached his fiduciary duties to IPCS, and (3) it was entitled to declaratory judgment on a variety of issues. A portion of IPCS' claims revolved around its contention that Auth had conspired with the corporation's former counsel to draft a buy/sell agreement that favored him personally. IPCS asked the court to rescind both the buy/sell agreement and the letters of understanding. It also asked the court to make a declaration regarding the mathematical model that it used in its operations. IPCS asked the court to declare that Dr. Gilliam was the owner of the mathematical model.

**{¶8}** Dr. Gilliam responded separately to Auth's complaint. He too filed several counterclaims against Auth, but he also filed several cross-claims against IPCS. With regard to his counterclaims, he alleged that (1) Auth breached his fiduciary duties to IPCS and Dr. Gilliam, (2) he was entitled to rescission of the buy/sell agreement, and (3) he was entitled to declaratory judgment on a variety of issues. Meanwhile, he asserted cross-claims against IPCS based on his

assertion that he owned the mathematical model it used in its operations. Dr. Gilliam alleged that IPCS owed him damages for past use of his mathematical model and the technology surrounding it. He further alleged that IPCS owed him damages for unpaid salaries during certain time periods.

{¶9} In responding to Dr. Gilliam's cross-claim, IPCS admitted most, if not all, of Dr. Gilliam's allegations, including that he owned the mathematical model and was entitled to damages for its past use. It also later came to light that, a few weeks before Auth filed suit, IPCS signed a technology license agreement with T.B. Gilliam, LLC, a limited liability company that Dr. Gilliam established. The agreement gave IPCS a non-exclusive license to use Dr. Gilliam's mathematical model and authorized the payment of royalties to T.B. Gilliam, LLC for allowing IPCS to use the model since 1998. Dr. Gilliam signed the technology license agreement on behalf of both IPCS and T.B. Gilliam, LLC.

{¶10} Following a pretrial, the parties agreed to bifurcate the issue of who owned the mathematical model from the remaining issues raised in the complaint, counterclaims, and cross-claims. Discovery commenced, but soon stalled because IPCS was unwilling to disclose certain materials to Auth. It was IPCS' position that the materials were protected by attorney-client privilege and that Auth, despite owning 45% of the corporation, was not entitled to the materials because his interests were adverse to the corporation. Auth, meanwhile, asserted that he was entitled to the materials based on either the shareholder-fiduciary exception or crime-fraud exception to the privilege. Auth filed a motion for an order permitting discovery, which both IPCS and Dr. Gilliam opposed. He also later filed a motion to compel, which both IPCS and Dr. Gilliam opposed. Meanwhile, IPCS filed a motion for a protective order, which Auth opposed.

{¶11} Upon review of the parties' filings, the court ordered IPCS to submit a privilege log. It then ordered Auth to review the log and provide it with a list of specific items that he believed were subject to disclosure. After Auth did so, the court ordered IPCS to produce for an in camera review the specific items that Auth listed. IPCS later filed a notice of compliance with the court's order.

{¶12} Following an in camera review, the court issued an order regarding the purportedly privileged materials. The court determined that Auth was entitled to discover the materials produced for review because, to the extent they might otherwise be privileged, IPCS had waived the privilege by disclosing the documents to Dr. Gilliam. The court acknowledged that Dr. Gilliam was the corporation's majority shareholder and, thus, the primary contact for its legal counsel. The court determined, however, that Dr. Gilliam's interest in the litigation was adverse to IPCS' interest. It further determined that it would be improper to deny Auth access to the information he sought, given that he and Dr. Gilliam were IPCS' sole shareholders, both had taken positions adverse to the corporation, and, thus far, the corporation had not withheld discovery from Dr. Gilliam. The court concluded that IPCS could not refuse to disclose its materials on the basis of either attorney-client privilege or the work-product doctrine.

{¶13} IPCS appealed from the court's order, and Auth filed a cross-appeal to challenge the basis upon which the court ruled in his favor. The appeal and cross-appeal are now before this Court for review. IPCS raises two assignments of error for this Court's review while Auth raises one assignment of error. For ease of analysis, we consolidate all of the assignments of error.

II.

## IPCS' ASSIGNMENT OF ERROR NO. 1

THE COURT BELOW ERRED WHEN IT CONCLUDED THAT DR. GILLIAM – THE IPCS AGENT COMMUNICATING ON BEHALF OF THE COMPANY WITH IPCS'S ATTORNEYS, KRUGLIAK – IS A STRANGER TO THE ATTORNEY-CLIENT RELATIONSHIP BETWEEN KRUGLIAK AND IPCS. THEREFORE, THE TRIAL COURT ERRONEOUSLY CONCLUDED THAT COMMUNICATIONS BETWEEN DR. GILLIAM AND KRUGLIAK CONSTITUTED A WAIVER OF IPCS'S PRIVILEGE AND WORK PRODUCT PROTECTION.

## IPCS' ASSIGNMENT OF ERROR NO. 2

THE COURT BELOW ALSO ERRED WHEN IT CONCLUDED THAT IPCS HAS A CONTINUING DUTY TO PRODUCE ITS ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS AND IPCS'S ATTORNEYS' WORK PRODUCT TO ITS OPPONENT THROUGHOUT THE DURATION OF THIS LAWSUIT.

## AUTH'S ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY IMPLICITLY OVERRULING CROSS-APPELLANT RICHARD J. AUTH'S ARGUMENTS, AS SET FORTH IN HIS MOTION FOR ORDER PERMITTING DISCOVERY, ASSERTING THAT: (a) THE SHAREHOLDER-FIDUCIARY AND CRIME-FRAUD EXCEPTIONS APPLY TO NEGATE THE ATTORNEY-CLIENT PRIVILEGE SO THAT AUTH, A 45% SHAREHOLDER, CAN OBTAIN INFORMATION RELEVANT TO HIS DISPUTES WITH THE MAJORITY AND CONTROLLING SHAREHOLDER; (b) THE CRIME-FRAUD EXCEPTION ALSO APPLIES TO NEGATE THE WORK PRODUCT DOCTRINE SO THAT AUTH CAN OBTAIN INFORMATION RELEVANT TO HIS DISPUTES WITH THE MAJORITY AND CONTROLLING SHAREHOLDER; AND (c) THE WORK PRODUCT DOCTRINE DOES NOT APPLY TO THE INFORMATION WITHHELD BY CROSS-APPELLEE BECAUSE AUTH HAS A SUBSTANTIAL NEED FOR THIS INFORMATION AND IS UNABLE TO OBTAIN IT BY ANY OTHER MEANS.

{¶14} In its assignments of error, IPCS argues that the trial court erred when it concluded that the materials at issue in this appeal are not protected by the attorney-client privilege and/or the work-product doctrine. In his assignment of error, Auth argues that the court erred when it ordered IPCS to produce the materials on the basis of waiver rather than (1) the

shareholder-fiduciary exception, or (2) the crime-fraud exception. Because the record does not contain the materials at issue here, we cannot address the merits of either argument.

{¶15} Pursuant to App.R. 9(A), the record on appeal consists of "[t]he original papers and exhibits thereto *filed in the trial court*, the transcript of proceedings, * * * and a certified copy of the docket and journal entries prepared by the clerk of the trial court * * *." (Emphasis added.) "It is an appellant's burden to ensure that the record is complete on appeal." *State v. Vu*, 9th Dist. Medina No. 11CA0042-M, 2012-Ohio-746, ¶ 27. Likewise, "[i]t is an appellant's duty to ensure that the record, or the portion necessary for review on appeal, is filed with the appellate court." *Swedlow v. Riegler*, 9th Dist. Summit No. 26710, 2013-Ohio-5562, ¶ 14, quoting *Shumate v. Shumate*, 9th Dist. Lorain No. 09CA009707, 2010-Ohio-5062, ¶ 6; App.R. 9(B). "In the absence of a complete record, this Court is obligated to presume regularity in the proceedings below." *King v. Carleton*, 9th Dist. Lorain No. 13CA010374, 2013-Ohio-5781, ¶ 30.

{¶16} Upon review, the record does not contain either IPCS' privilege log or any of the materials that it sought to protect from disclosure. IPCS filed three notices of interest in the lower court: a notice that it had provided the court with a privilege log, a notice that it had provided the court with the subject materials for in camera review, and a notice that it had provided the court with three additional items based on their subsequent disclosure. IPCS, however, never filed its privilege log or any of the materials under seal or otherwise ensured that they were filed under seal following the court's in camera review.[1] As the appellant, it was IPCS' burden to ensure that those materials were filed in the court below such that they would be part of the record on appeal. *See Vu* at ¶ 27. *See also Swedlow* at ¶ 14, quoting *Shumate* at ¶ 6; App.R. 9(B). Because the record does not contain the materials that were the subject of the

---

[1] This Court would note that IPCS filed other items under seal, including Auth's deposition.

court's order, this Court must presume regularity and affirm its decision to order their disclosure on the basis of waiver. *See King* at ¶ 30. *See also Heinrichs v. 356 Registry, Inc.*, 10th Dist. Franklin Nos. 15AP-532, 15AP-595, 2016-Ohio-4646, ¶ 66-69; *McComas v. Ace Reporting, Inc.*, 1st Dist. Hamilton No. C-070103, 2007-Ohio-6216, ¶ 4-9. Accordingly, the assignments of error are overruled.

## III.

**{¶17}** IPCS' assignments of error are overruled. Likewise, Auth's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant/Cross-Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
CARR, J.
CONCUR.


APPEARANCES:

JOHN B. SCHOMER, DAVID J. LEWIS, MICHELE MORRIS, and TERRY J. EVANS, Attorneys at Law, for Appellant/Cross-Appellee.

JEFFREY T. HEINTZ, LOUISE M. MAZUR, BRIDGET A. FRANKLIN, and LAURA F. FRYAN, Attorneys at Law, for Appellee/Cross-Appellant.

JOHN C. WEISENSELL, Attorney at Law, for Defendant.